UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEREK WILLIAMS, CHARLIE TRIPLETT,
WILLIE DOLLARD

Plaintiffs

-against-

CITY OF SAFETY HARBOR

Defendant

CIVIL ACTION No. :

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiffs **Derek Williams, Charlie Triplett, and Willie Dollard** ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals, by and through their undersigned attorney, sues Defendant, **CITY OF SAFETY HARBOR** ("Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a proceeding for damages, declaratory, and injunctive relief against Defendant to redress the deprivation of rights secured by Plaintiffs by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1983; the Fourteenth Amendment of the Constitution of the United States; and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. § 760.11 (1992).

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1331, § 1343, and § 1367.

3. This action is authorized and instituted pursuant to Title VII and rights secured by the Civil Rights Act of 1964, as amended in 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1983; the Fourteenth Amendment of the Constitution of the United States; and the Florida Civil

Rights Act of 1992 (FCRA), Fla. Stat. § 760.11 (1992).

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), the venue of this action is properly placed in the Middle District of Florida because the events and employment practices alleged to be unlawful were committed in Pinellas County, within the jurisdiction of this Honorable Court.

## PARTIES

5. Plaintiff, Derek Williams, is African American and a resident of this judicial district. He was employed by the Defendant as a Driver within the Sanitation division of the Public Works Department.

6. Plaintiff, Charlie Triplett, is African American and a resident of this judicial district. He was employed by Defendant as a Driver within the Sanitation division of the Public Works Department.

7. Plaintiff, Willie Dollard, is African American and a resident of this judicial district. He was employed in the Stormwater Maintenance II position within the Street and Stormwater Division of the Public Works Department

8. At all relevant times, Defendant, City of Safety Harbor:
    a. was and is a municipality in the State of Florida;
    b. has conducted business within this judicial district; and
    c. has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c)

9. Sherri Kennedy is the Sanitation Supervisor and directly supervised Plaintiffs Derek Williams and Charlie Triplett.

10. Lenny Degroat was the Street and Stormwater Supervisor and directly supervised Plaintiff Willie Dollard.

11. Sherri Kennedy and Lenny Degroat reported to Ray Boler. Ray Boler was the director of the Public Work's Department.

## ADMINISTRATIVE PREREQUISITES

12. Notice(s) of Tort Claim(s) pursuant to Florida Statute Section 768.28 were given to the Defendant, City of Safety Harbor, and all conditions precedent to suing the Defendant, City of Safety Harbor, have been met.

13. Plaintiffs timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in January 2017 and June 2018. Copies of the charges are attached as Exhibit "A", Exhibit "B", and "Exhibit C".

14. More than 180 days have passed since the filing of this charge.

15. In March 2020, Plaintiffs requested Right to Sue Notices from the EEOC.

## FACTUAL ALLEGATIONS

*Plaintiff Derek Williams*

16. At all times relevant, Plaintiff Derek Williams was qualified to perform his duties within the legitimate expectations of his employer.

17. At all times relevant herein, Plaintiff's performance evaluations were satisfactory.

18. Plaintiff Derek Williams was employed by the Defendant from April 13, 2013 to August 9, 2016.

19. On or about August 9, 2016, Ray Boler and Sherri Kennedy held a meeting with Plaintiff Derek Williams.

20. Ray told Plaintiff Derek Williams that Plaintiff had used more than 80 hours of sick leave

in violation of the Public Work's Departmental policy.

21. Plaintiff Derek Williams used a large portion of his sick leave to care for his special needs minor child .

22. Under the City of Safety Harbor's policies and procedures, Plaintiff's absences should not have been included in an excessive sick leave calculation.

23. Ray presented Plaintiff with a pre-written letter to sign. Plaintiff Derek Williams refused to sign the pre-written resignation letter.

24. Defendant terminated Plaintiff Derek William's employment

25. In August 2016, there were several other employees within the Public Work's Department who used more than 80 hours in sick leave and were not terminated or otherwise disciplined.

*Plaintiff Charlie Triplett:*

26. At all times relevant, Plaintiff Charlie Triplett was qualified to perform his duties within the legitimate expectations of his employer.

27. At all times relevant herein, Plaintiff Charlie Triplett's performance evaluations were satisfactory.

28. Plaintiff Charlie Triplett was employed by the Defendant from April 25, 2005 until August 8, 2016.

29. On or about August 8, 2016, Ray Boler and Sherri Kennedy held a meeting with Plaintiff Charlie Triplett.

30. Ray told Plaintiff Charlie Triplett that Triplett had used more than 80 hours in sick leave (against the Public Work's Departmental policy).

31. Plaintiff used a large portion of his sick leave for physician authorized absences and to care for his sick minor child .

32. Under the City of Safety Harbor's policies and procedures, Plaintiff's absences should not have been included in an excessive sick leave calculation.

33. Ray presented Plaintiff with a pre-written letter to sign. Plaintiff signed the pre-written resignation letter.

34. There were several other employees within the Public Work's Department who used more than 80 hours in sick leave and were not terminated or otherwise disciplined.

35. Plaintiff Charlie Triplett presented evidence that his absences were physician authorized and Management refused to consider the evidence.

*Plaintiff  Willie Dollard*

36. Plaintiff Willie Dollard was employed by the Defendant for 20 years. He was employed from June 15, 1998 until November 16, 2018.

37. At all times relevant, Plaintiff Willie Dollard was qualified to perform his duties within the legitimate expectations of his employer.

38. At all times relevant herein, Plaintiff's performance evaluations were satisfactory.

39. Plaintiff Willie Dollard was passed up for promotions, disciplined harsher than his white counterparts, denied access to tools necessary to complete his job and subjected to a racially hostile work environment.

40. In December 2017, Plaintiff Dollard provided a witness statement on behalf of several employees who had filed racial discrimination charges brought against Defendant.  In June 2018, Plaintiff Dollard filed a racial discrimination charge against the Defendant.

41. In November 2018, Defendant terminated Plaintiff Dollard for a minor offense.

42. Plaintiff Willie Dollard had no disciplinary history within the ten years preceding his termination.

*Racial Discrimination/ Hostile Work Environment*

43. Management did not provide Plaintiff and other African American employees with the same protection for family and health issues that was granted for their Caucasian counterparts. More specifically, management did not provide African American employees with the information necessary to receive protection for family and/or health issues.

44. Plaintiff and other African American employees received harsher and more frequent discipline than Caucasian employees.

45. Plaintiff and other African American employees were given harder and more strenuous work assignments than Caucasian employees.

46. Policies governing lunch and breaks were implemented in a racially discriminatory manner. More specifically, Plaintiff and other African American employees were prohibited from taking lunch breaks when their Caucasian counterparts were permitted to do the same.

*Defendant's policies, practices, and customs*

47. During 2016, approximately seven of the ten African Americans employed within the Sanitation Department were forced to resign or terminated. The sole Hispanic employee in the Sanitation Department was terminated during 2016. None of the Caucasian employees in the Sanitation Department were terminated during 2016.

48. Between 2017 and 2018, seven minorities filed racial discrimination charges with the EEOC against Defendant. Six of the seven charging parties were African American.

49. Between 2017 and 2018, two of the Defendant's former employees provided statements describing a racially hostile work environment.

50. The charging parties allege:
    a. African Americans were steered toward specific departments and away from other

    departments. African Americans were steered to the Sanitation Department and away from less physically strenuous departments. For instance, during the last 20 years only one African American employee was employed in the Parks Department. In contrast, during 2016, ten of the sixteen people employed by the Sanitation Department were African American.

   b. African Americans faced harsher and more frequent discipline(including termination and forced resignations).

   c. African Americans were denied promotions. Caucasians with less experience, credentials, poor attendance history, and/or lower performance evaluations were promoted before African Americans.

   d. African Americans were routinely denied protection for family and health issues.

   e. African Americans were subjected to a hostile work environment.

   f. African Americans were hired and/or steered toward more physically strenuous positions and/or lower ranking positions.

   g. African Americans were denied tools necessary to complete their jobs.

   h. African Americans were subjected to unsafe and often intolerable work conditions.

   i. African Americans were assigned harder worker assignments.

   j. African Americans were denied breaks and lunch breaks. African Americans were denied the ability to break in the Public Works Yard(outside break area) like their Caucasian counterparts.

51. During 2019, the Pinellas County Office of Human Rights found " Reasonable Cause" to believe that unlawful racial discrimination occurred against three of the charging parties. More specifically, the Pinellas County Office of Human Rights found "Reasonable Cause" to

believe unlawful racial discrimination had occurred against Plaintiff Charlie Triplett and Plaintiff Derek Williams.

52. Defendant has a long- standing history of racial discrimination against African American employees.

53. For instance, during 2007, a former employee named Geno Baker filed a lawsuit against Defendant alleging racial discrimination and harassment. Geno Baker received a jury verdict in his favor.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs will seek to certify a class pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(3) to pursue their race based discrimination claims arising under Section 1983 (Counts One, Two, and Three) and Title VII (Counts Four and Five).

55. Plaintiffs seek to represent a Class defined as "All African American employees who suffered one or more of the following: harsher and more frequent discipline than their Caucasian counterparts; a racially hostile work environment; hired and/or steered toward more physically strenuous positions and/or lower ranking positions; denied tools necessary to complete their assignments; subjected to unsafe and/ or intolerable work conditions; denied protection for family and health issues; denied breaks when their Caucasian counterparts were granted the same; or sought positions and were otherwise eligible to work in the position but, on one or more occasion, were not hired for the position for which they were otherwise qualified during the period of four years prior to the filing of the Plaintiffs' Complaint for the § 1983 claims and three hundred days prior to the filing of Plaintiffs' EEOC charges for the Title VII claims up through and including the date of judgment."

56. A class may be certified pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(3) because:

    a. The class is so numerous that joinder of all members is impracticable. While the

    precise number of Class Members has not been determined at this time, Plaintiffs estimate that there may be at least one hundred putative class members who were subjected to Defendants' pattern or practice of discrimination since 2014.

b. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members. These common questions of law and fact include, without limitation:

    (i) Whether Defendant has a policy, pattern or practice in its disciplinary practices that results in discrimination against African American employees;

    (ii) Whether Defendant failed to exercise reasonable care to prevent its agents, from engaging in discriminatory assignment practices;

    (iii) Whether Defendant has a policy, pattern, or practice in place in its assignment practices that results in discrimination against African American employees or is based on intentional discrimination against African American employees;

    (iv) Whether Defendant has a policy, pattern, or practice of subjecting African American employees to a racially hostile work environment;

    (v) Whether Defendant has a policy or a pattern or practice in place in its hiring practices that results in discrimination against African American employees;

    (vi) Whether conduct complained of herein constitutes a violation of Title VII;

    (vii) Whether conduct complained of herein constitutes a violation of Section 1983;

    (viii) Whether Defendant has, had, and/or continues to have to have a systemic custom or policy of race-based discrimination targeting African American employees and job applicants;

    (ix) Whether Defendant failed to exercise reasonable care to prevent its agents, from engaging in discriminatory hiring practices;

    (x) Whether Plaintiffs and members of the Class have or continue to sustain damages, and, if so, the proper measure of damages;

    (xi) Whether Plaintiffs and other members of the Class are entitled to, among other things, injunctive and other equitable relief, and if so, the nature and extent of such injunctive and other equitable relief.

c. Plaintiffs will fairly and adequately represent and protect the interests of the Class members;

d. Plaintiffs' Counsel is competent in litigating employment discrimination and experienced in litigating class actions;

e. The class representatives and the members of the class have been equally affected by Defendant's race-based discrimination in its hiring practices and by Defendant's race-based discrimination in its assignment practices.

f. The class representatives, class members, and Defendant have a commonality of interest in the subject matter and remedies sought and the class representative can represent the interests of the class fairly and adequately. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions creating a hardship on the class members, Defendant, and the Court.

g. The common legal and factual issues identified above predominate over other issues in this action that affect only individual members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

    h.  By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether the Defendants engaged in a pattern or practice of discrimination in violation of Title VII and Section 1983, and what aggregate damages Defendant owes to the Class.

    i.  Upon information and belief, there are no other pending lawsuits in which members of the Class have raised similar allegations.

    j.  This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendant is located in this District.

    k.  There are no difficulties in managing this case as a class action.

57. Therefore, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

## COUNT ONE: RACIAL DISCRIMINATION
**(Disparate treatment based on race in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution)(Plaintiffs on behalf of themselves and a class of similarly situated African American employees)**
*(Class Action)*

58. Plaintiffs repeat and reallege each allegation in paragraphs 1-43, 48, 51b, and 52 -54 above as if each were more fully set forth herein.

59. The Defendant, acting under color of Florida Law, intentionally deprived Plaintiffs and other similarly situated African American employees of their right to equal protection of law as guaranteed by the Fourteenth Amendment of the United States Constitution and as guaranteed by 42 U.S.C. §1983 by engaging in disciplinary practices that result in disparate treatment against African American employees.

60. Defendant discriminated against Plaintiffs and other similarly situated African American employees based on race by subjecting them to disparate treatment in discipline in

violation of 42 U.S.C. § 1983.

61. Defendant's unlawful acts have caused Plaintiffs and other similarly situated African American employees to suffer economic damages in the form of lost income, benefits, and consequential damages in an amount to be proved at trial. Defendant's unlawful acts have caused Plaintiffs and other similarly situated African American employees to suffer noneconomic damages in the form of emotional distress, in an amount to be proved at trial.

62. Pursuant to 42 U.S.C. § 1988, Plaintiffs and other similarly situated African American employees are entitled to costs, disbursements, and reasonable attorney's fees incurred.

### COUNT TWO: RACIAL POLICIES, PRACTICES, AND CUSTOM
**(Policies, practices, and custom based on race in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution) (Plaintiffs on behalf of themselves and a class of similarly situated African American employees)**
*(Class Action)*

63. Plaintiffs repeat and reallege each allegation in paragraphs 1-54 above as if each were more fully set forth herein.

64. The Defendant, acting under color of Florida Law, intentionally deprived Plaintiffs and similarly situated African American employees of their right to equal protection of law as guaranteed by the Fourteenth Amendment of the United States Constitution and as guaranteed by the Civil Rights Act of 1871, 42 U.S.C. §1983;

65. Since at least 2000, Defendant has engaged in unlawful employment policies, practices, and custom of unlawful acts in violation of 42 U.S.C. § 1983:

    a. As described in paragraphs 48 -54 above, Defendant subjected African American employees to different terms and conditions of employment(including engaging in racially discriminatory practices in dispatching work assignments) and engaged in a practice, policy, or custom of such acts based on race.

    b. As described in paragraphs 44-47 above, Defendant subjected Plaintiffs and similarly situated African American employees to a hostile work environment and engaged in a practice, policy, or custom of such acts based on race;

66. As a result of Defendant's unlawful actions described herein above, Plaintiffs and similarly situated African Americans suffered and continue to suffer damages.

67. Pursuant to 42 U.S.C. § 1988, Plaintiffs and similarly situated African Americans are entitled to costs, disbursements, and reasonable attorney's fees incurred.

**COUNT THREE : RACIAL DISCRIMINATION(DISPARATE TREATMENT)**
**(Denial of equal protection rights guaranteed by *42 U.S.C. §1983* and the Fourteenth Amendment of the U.S. Constitution)(Plaintiffs on behalf of themselves and a class of similarly situated African American employees)**
*(Class Action)*

68. Plaintiffs repeat and reallege each allegation in paragraphs 1-54 above as if each were more fully set forth herein.

69. The Defendant, acting under color of Florida Law, deprived Plaintiffs and similarly situated African American employees of their right to equal protection of law as guaranteed by the Fourteenth Amendment of the United States Constitution and as guaranteed by the Civil Rights Act of 1871, 42 U.S.C. § 1983 when it engaged in discriminatory hiring practices, resulting in disparate treatment of Plaintiffs and a class of African-American employees and African American job applicants.

70. As described more fully above and specifically in paragraphs 1-54, *supra*, Defendant intentionally discriminated against Plaintiffs and other similarly situated African American employees based on their race, by engaging in discriminatory hiring practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983.

71. Defendant's unlawful acts have caused Plaintiffs and other similarly situated African American employees to suffer economic damages in the form of lost income, benefits,

and consequential damages in an amount to be proved at trial.

72. Defendant's unlawful acts have caused Plaintiffs and other similarly situated African American employees to suffer noneconomic damages in the form of emotional distress, in an amount to be proved at trial.

73. Pursuant to 42 U.S.C. § 1988, Plaintiffs and other similarly situated African American employees are entitled to costs, disbursements, and reasonable attorney's fees incurred.

**COUNT FOUR : RACIAL DISCRIMINATION(DISPARATE TREATMENT)**
**(In violation of Title VII of the Civil Rights Act )(Plaintiffs on behalf of themselves and a class of similarly situated African American employees)**
**(Class Action)**

74. Plaintiffs repeat and reallege each allegation in paragraphs 1-43, 51b, and 52-54 above as if each were more fully set forth herein.

75. Plaintiffs and similarly situated African Americans are members of a protected class.

76. Plaintiffs and similarly situated African Americans were treated differently than individuals not in their protected class in that African American employees faced harsher discipline, more frequent discipline, and were often subjected to coerced resignations or terminations.

77. Race was the sole or motivating factor in Defendant's decision to subject Plaintiffs and similarly situated African Americans to harsher discipline, more frequent discipline, and coerced resignations or terminations.

78. By the conduct described above, Defendant engaged in unlawful employment practices against Plaintiffs and similarly situated African American employees based on their race in violation of Title VII of the Civil Rights Act.

79. As a result of Defendant's unlawful actions described hereinabove, Plaintiffs and similarly situated African American employees have suffered and continue to suffer damages.

80. Pursuant to 42 U.S.C. § 2000e 5(k), Plaintiffs and similarly situated African American employees are entitled to costs, disbursements, and reasonable attorney's fees incurred.

**COUNT FIVE : RACIAL DISCRIMINATION(DISPARATE TREATMENT)**
**(In violation of Title VII of the Civil Rights Act )(Plaintiffs on behalf of themselves and a class of similarly situated African American employees)**
**(Class Action)**

81. Plaintiffs repeat and reallege each allegation in paragraphs 1-54 above as if each were more fully set forth herein.

82. Plaintiffs and similarly situated African Americans are members of a protected class.

83. Plaintiffs and similarly situated African Americans were treated differently than individuals not in their protected class in that African American employees were subjected to discriminatory assignment practices, were routinely denied breaks and lunch breaks when their Caucasian counterparts were allowed the same, denied protection for family and health issues, were subjected to a hostile work environment, and were hired and/or steered toward more physically strenuous positions.

84. Race was the sole or motivating factor in Defendant's decision to subject Plaintiffs and similarly situated African Americans to harsher and more frequent discipline, assign more physically strenuous work assignments, deny breaks and lunch breaks when their Caucasian counterparts were allowed the same, deny protection for family and health issues, create a racially hostile work environment, and hire and/or steer African Americans toward more physically strenuous positions.

85. By the conduct described above, Defendant engaged in unlawful employment practices against Plaintiffs and similarly situated African American employees based on their race in violation of Title VII of the Civil Rights Act.

86. As a result of Defendant's unlawful actions described hereinabove, Plaintiffs and

similarly situated African American employees have suffered and continue to suffer damages.

87. Pursuant to 42 U.S.C. § 2000e 5(k), Plaintiffs and similarly situated African American employees are entitled to costs, disbursements, and reasonable attorney's fees incurred.

**COUNT SIX : CONSTRUCTIVE DISCHARGE**
**(Unlawful termination in violation of 42 U.S.C. §1983 and Due Process Clause of 14th Amendment)(Plaintiff Charlie Triplett)**

88. Plaintiff repeats and realleges each allegation in paragraphs 1-16 and 27-36 above as if each were more fully set forth herein.

89. Plaintiff avers that, under the 5th and 14th Amendments of the U.S. Constitution, he is entitled to be protected against deprivation of property without due process of law.

90. The City's municipal code provides that disciplinary actions of discharge, demotion, or suspension without pay require just cause. City of Safety Harbor, Florida Municipal Code § 2.20 (10). After a probationary period, employees may not be discharged, demoted, or suspended without just cause or right of appeal. Plaintiff avers that as an employee outside of his probationary period, he had a property interests in continued employment.

91. The Defendant, acting under color of Florida Law, intentionally deprived Plaintiff of his property interest in continued employment as guaranteed by under the 14th Amendment of the U.S. Constitution.

92. Plaintiffs resignation was so involuntary that it amounts to constructive discharge.

93. Plaintiffs resignation was involuntary because he relied on Defendant's material misrepresentations when deciding to resign:

    a. Management made a material misrepresentation regarding the alternative to resignation by omitting the fact that pursuant to Chapter 2, Article VI of City Code, Plaintiff was entitled to appeal any discipline or termination to the Personnel Review

       Board for a hearing.

   b. Defendant made a material misrepresentation that Plaintiff had violated the Department's excessive sick leave policy when Defendant knew or should have known that Plaintiff was not in violation of the excessive sick leave policy because many of Plaintiffs absences were physician authorized and/ or FMLA qualifying. Pursuant to Defendant's code of conduct, physician authorized and/ or FMLA qualifying are excluded from abuse of leave calculations.

94. Defendant obtained Plaintiff's "resignation" through coercion and/ or duress:

   a. Plaintiff did not understand the nature of the choice he was given because Defendant provided misinformation and withheld material information regarding the alternative.

   b. Plaintiff was forced to make a split-second decision and was not given a reasonable amount of time to decide regarding resignation.

   c. Plaintiff was not permitted to choose the effective date of his resignation.

   d. Plaintiff acted without legal counsel.

95. Defendant's behavior caused Plaintiff's employment to terminate without notice or hearing.

96. Therefore, Defendant's conduct caused Plaintiff to be deprived of his property interest in continued employment without Due Process in violation of the Fourteenth Amendment of the U.S. Constitution.

97. As a result of Defendant's unlawful actions described herein above, Plaintiff has suffered and continues to suffer damages.

98. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to his costs, disbursements, and reasonable attorney's fees incurred.

## JURY TRIAL DEMANDED

99. Plaintiff requests a jury trial on all issues raised by the allegations in this Complaint.

WHEREFORE, Plaintiffs on behalf of themselves and similarly situated African American employees respectfully pray this Court:

a. allows this action to proceed as a class action against City of Safety Harbor pursuant to Rule 23;

b. declares the City of Safety Harbor has violated Plaintiffs' rights under Title VII of the Civil Rights Act , Florida Civil Rights Act , 42 U.S.C. §1983 and the Fourteenth Amendment of the U.S. Constitution;

c. enjoins the City of Safety Harbor from continuing or permitting future racial discrimination against African American employees in violation of Title VII of the Civil Rights Act , Florida Civil Rights Act , 42 U.S.C. §1983 and the Fourteenth Amendment of the U.S. Constitution;

d. enters a judgment in their favor Plaintiffs and similarly situated African Americans against the City of Safety Harbor for back pay and front pay damages for Plaintiffs and the Class in amounts to be determined at trial;

e. awards reasonable attorney's fees, costs and disbursements incurred in the prosecution of this action, including expert witness fees;

f. such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: August 7, 2020

          Respectfully submitted,

*Janica M. Munford*
Janica M. Munford
Bar No.:0107201
TRIALCOUNSEL&
Attorney for Plaintiff
2822 54th Avenue South #206
St. Pete., Florida 33712
Telephone: (727) 234-8887
Fax: (727) 683-9439
Janica@Munfordlaw.com